IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 10, 2002 Session

## STATE OF TENNESSEE v. ANTONIUS HARRIS

**Direct Appeal from the Circuit Court for Gibson County**
**No. 6962     L.T. Lafferty, Judge**

**No. W2001-02617-CCA-R3-CD - Filed November 7, 2002**

A Gibson County jury convicted the defendant of two counts of especially aggravated kidnapping, one count of attempted second degree murder, two counts of aggravated assault, and one count of felony reckless endangerment. The trial court ordered him to serve an effective sentence of thirty-one years. On appeal, the defendant argues: (1) the trial court should have dismissed the superseding indictment; (2) there was insufficient evidence to support all of his convictions except for one aggravated assault conviction; (3) the trial court should have instructed the jury on self-defense; (4) the trial court should have instructed the jury on facilitation on all charged offenses and attempted voluntary manslaughter as a lesser-included offense of attempted first degree murder; and (5) his sentences were excessive. We set aside one sentence for aggravated assault because it was merged into the conviction for attempted second degree murder, but otherwise affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as
Modified; Remanded**

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID G. HAYES, J., joined. JOSEPH M. TIPTON, J., filed a concurring opinion.

Sam J. Watridge, Humboldt, Tennessee, for the appellant, Antonius Harris.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; Garry G. Brown, District Attorney General; and Edward L. Hardister, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Angela Barnett, her boyfriend Derrick Harris,[1] a friend Darnell Thomas, her eight-year-old daughter Essence Harris, and her four-year-old son Isaiah Harris lived in a mobile home park in Humboldt, Tennessee. Angela Barnett testified that she was home alone with her son on January 7, 2000, when the defendant, Essence Harris' father, arrived at approximately 10:00 a.m. with presents for their daughter. The presents were in Wal-Mart sacks. Barnett and Thomas testified they later found a receipt in the Wal-Mart sacks for rope and duct tape purchased at 9:32 that morning.

Barnett stated the defendant went out to his car and later returned. She said that after a few seconds, defendant's wife, co-defendant Claudia Harris, who was waiting in the car, also came inside. Barnett testified the defendant then pulled out a revolver. According to Barnett, the defendant indicated someone had stolen $48,000 from him, and that he heard Derrick Harris was involved in the theft. Barnett stated the defendant questioned her about Mark Cunningham, an alleged acquaintance of Barnett and Derrick Harris, whom the defendant believed was also involved in the alleged theft. Barnett said the defendant asked about Derrick Harris, and she replied he was in Trenton. Barnett testified she complied with the defendant's command that she page Derrick Harris, but that he did not return the phone call.

According to Barnett, the defendant instructed her to change clothes because she was "fixing to take [him] to Trenton." Barnett stated the defendant asked her if she knew someone who could watch her son; when she replied that she did not, he and the co-defendant decided they would take the child to the defendant's mother. Barnett said the defendant followed her outside. Co-defendant Claudia Harris carried the child and put him in the back seat of the car next to the defendant, who was seated behind Barnett. Barnett testified she could not see if the defendant was still holding the gun, but she heard her son ask the defendant, "What is that?" Derrick Harris and Darnell Thomas testified they returned home with Essence Harris at about 10:00 a.m. and found the house empty.

Barnett stated they drove to the home of the defendant's mother in Trenton, where the co-defendant took the child inside while the defendant and Barnett remained in the car. Barnett said the defendant still had the gun drawn and kept saying he had to find the stolen money. Barnett testified that after the co-defendant returned to the car, they drove around Trenton looking for Derrick Harris, but were unable to find him. Barnett stated the co-defendant told her they would not hurt her if she would help them. They then returned to Barnett's home in Humboldt, where they found Derrick Harris.

Angela Barnett said the co-defendant stated, "Well, we're just gonna have to pull up there and do this" when Barnett advised them that Essence Harris was also in the house. Barnett testified she approached the house with the defendant walking behind her holding the gun; she said he threatened her if she tried anything.

---

[1]There is no indication that Derrick Harris and defendant Antonius Harris are related.

Derrick Harris and Angela Barnett testified Derrick Harris opened the door after Barnett knocked; they said Barnett immediately grabbed her daughter and ran to her daughter's room. Essence Harris testified she was standing near Derrick Harris as he opened the door, and the defendant, who had a gun, grabbed Derrick Harris and pushed him against the wall. Derrick Harris stated the defendant followed Barnett into the house and sprayed him with mace. Angela Barnett said the defendant grabbed Derrick Harris and she heard them scuffling. Darnell Thomas testified he was in his room and heard tussling after Derrick Harris answered the door.

According to Derrick Harris, he fell into the bathroom and tried to shut the door, but the defendant stuck the gun barrel into the door to prevent it from closing. Darnell Thomas testified he looked out of his room and saw the defendant trying to force his way into the bathroom by banging the door with his shoulder while "aiming his gun around." Thomas stated he retreated into his room and jumped out of the window. Derrick Harris said he opened the bathroom door because the defendant threatened to shoot everybody and was "waving the gun around."

Derrick Harris testified the defendant then grabbed him by the neck, pointed the gun to his head, and threw him against the wall. Essence Harris also testified she observed the defendant grab Derrick Harris and push him against the wall. Derrick Harris stated the defendant questioned him about Mark Cunningham and said Cunningham had taken $50,000 relating to drugs. He said the defendant threatened him if he did not take the defendant to Cunningham. Derrick Harris further testified the co-defendant threatened they would shoot everyone in the house unless he complied, and they "weren't gonna leave no witnesses." He stated he initially resisted their efforts to take him out of the house, but he agreed to go outside because he feared for the safety of Barnett and her daughter if the defendant were to shoot him in the house. Barnett and Essence Harris stated the defendant escorted Derrick Harris outside at gunpoint.

Darnell Thomas testified he went to the nearby home of William Gaines to seek help. Gaines testified he went to assist Derrick Harris and saw the defendant walk down the steps behind Derrick Harris with his arm around Derrick Harris' neck and a gun pointed to his head. Derrick Harris said the defendant and co-defendant attempted to force him into their car, and he resisted their efforts. Darnell Thomas testified he saw the defendant with a revolver trying to force Derrick Harris into the car.

Gaines testified he was speaking with the co-defendant, two feet away from her, in an effort to assess the situation when the defendant told Gaines to keep his hands off of her; Gaines said he remained where he was. Derrick Harris stated he told Gaines to grab her and "break her neck," but before Gaines could move towards her, the defendant pointed the gun at Gaines and told Gaines to step back. Derrick Harris said Gaines complied. Gaines confirmed he made no effort to grab the co-defendant.

Barnett said she took her gun, a nine millimeter, from her bedroom; went to the door; said, "Let him go;" fired her gun once; and shot the defendant. Gaines stated the shot struck the defendant in the back. Then, according to the witnesses, the defendant turned and pointed his gun at Barnett,

who quickly ducked inside the house. Essence Harris testified she was standing near her mother when her mother shot the defendant.

Derrick Harris and William Gaines stated the co-defendant ran away after Barnett shot the defendant. Derrick Harris said the defendant shot him as he tried to run. Essence Harris, Angela Barnett, and Darnell Thomas also testified they saw the defendant shoot Derrick Harris.

William Gaines testified the defendant fired four shots at him, and one of the shots passed through the sweater he was wearing. Derrick Harris testified he heard the defendant fire the four shots at Gaines. Barnett and Thomas also stated they saw the defendant firing shots toward Gaines before getting in his car.

Detective Dennis Wright of the Humboldt Police Department testified the defendant was apprehended two months later in California; the defendant's mother had previously told Detective Wright the defendant was dead.

The jury convicted the defendant of two counts of especially aggravated kidnapping for victims Angela Barnett and Derrick Harris, attempted second degree murder of Derrick Harris as a lesser-included offense of attempted first degree murder, two counts of aggravated assault for shooting Derrick Harris and for firing at William Gaines, and felony reckless endangerment of Essence Harris. The co-defendant was tried separately.

## I. INDICTMENTS

Although the first indictment is not a part of the record, we glean the following from the hearing on the defendant's motion to dismiss. The defendant was first indicted June 15, 2000. That indictment charged the defendant with three counts of aggravated kidnapping, attempted first degree murder, and aggravated assault. A second indictment was returned January 22, 2001, which charged the defendant and the co-defendant with two counts of especially aggravated kidnapping, attempted first degree murder, two counts of aggravated assault, reckless endangerment, and filing a false report. Both indictments stemmed from the events of January 7, 2000.

The defendant filed a motion to dismiss both indictments. At the motion hearing, the state announced it intended to try the defendant on only the second indictment, and the first indictment would be dismissed following trial on the second indictment. The trial court denied the defendant's motion and instructed the state to dismiss the first indictment at the conclusion of proceedings on the second indictment.

Whether to dismiss an indictment lies within the discretion of the trial court. State v. Benn, 713 S.W.2d 308, 311 (Tenn. 1986). This court may not interfere with such a ruling absent clear abuse of that discretion. State v. Harris, 33 S.W.3d 767, 769-70 (Tenn. 2000).

The power to seek a superseding indictment lies within the broad discretion granted to the state by the United States Constitution and the law of our state. *Id.* at 771. If jeopardy has not attached on a pending indictment, a grand jury may return a subsequent indictment against a criminal defendant. *Id.* As long as the state is not bringing a superseding indictment to harass or intimidate the accused, it may obtain a superseding indictment at any time prior to trial without dismissing a pending indictment and may select the indictment upon which it wishes to proceed to trial. *Id.* We discern no abuse of discretion by the trial court in denying the motion to dismiss.

## A. Speedy Trial/ Due Process

On appeal, the defendant argues the superseding indictment violated his right to a speedy trial. However, during the motion hearing in the trial court, defense counsel stated:

> I am saying that one of these Indictments has got to be dismissed. I think we agree on that. I think that the one that I would like the Court to dismiss is the last one. Depending on what the court's gonna do — if the old Indictment remains, then I think there has been a speedy trial violation.

The defendant's argument to the trial court that a trial on the first indictment would violate his right to a speedy trial is inconsistent with his argument on appeal. In the trial court, the defendant did not argue that the second indictment deprived him of a right to a speedy trial. Since an appellant cannot change theories from the trial court to the appellate court, this issue is waived. State v. Dooley, 29 S.W.3d 542, 549 (Tenn. Crim. App. 2000).

Even if the issue were not waived, we find the defendant's argument to be without merit. Without question, criminal defendants are constitutionally and statutorily entitled to a speedy trial. U.S. Const. Amend. VI; Tenn. Const. Art. I, § 9; Tenn. Code Ann. § 40-14-101. There is no set time limit within which the trial must commence; rather, consideration must be given to each case on an *ad hoc* basis. State v. Simmons, 54 S.W.3d 755, 759 (Tenn. 2001). The Tennessee Supreme Court has adopted the balancing test set forth in Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), as the method for determining whether a defendant's right to a speedy trial has been violated. State v. Wood, 924 S.W.2d 342, 346 (Tenn. 1996); State v. Baker, 614 S.W.2d 352, 353 (Tenn. 1981). If, after conducting this balancing test, it is concluded that the defendant was in fact denied a speedy trial, constitutional principles require that the conviction be reversed and the criminal charges dismissed. State v. Bishop, 493 S.W.2d 81, 83 (Tenn. 1973).

In conducting this balancing test, we are required to examine the conduct of both the prosecution and the appellant, focusing primarily on: (1) the length of the delay; (2) the reason for the delay; (3) whether appellant asserted his right to a speedy trial; and (4) whether appellant was prejudiced by the delay. Wood, 924 S.W. 2d at 346; Bishop, 493 S.W.2d at 84; State v. Jefferson, 938 S.W.2d 1, 12-13 (Tenn. Crim. App. 1996). The most important factor is whether the defendant was prejudiced by the delay. Simmons, 54 S.W.3d at 760; State v. Vance, 888 S.W.2d 776, 778

(Tenn. Crim. App. 1994). The most important inquiry with regard to prejudice is whether the delay impaired the defendant's ability to prepare a defense, and a delay of as long as two years standing alone will not support a finding of a speedy trial violation. Vance, 888 S.W.2d at 778.

The triggering factor is the length of the delay. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Barker, 407 U.S. at 530, 92 S. Ct. at 2192. A delay of one year is sufficient to trigger the Barker inquiry. State v. Vickers, 985 S.W. 2d 1, 5 (Tenn. Crim. App. 1997).

In the instant case, the offenses were committed on January 7, 2000. The defendant fled and was apprehended in California two months later. He was returned to Tennessee in April 2000. He was initially indicted in June 2000. The record is silent concerning any further activity on the charges against the defendant until the superseding indictment in January 2001. There is an indication the district public defender was allowed to withdraw as counsel for the defendant in January 2001, and substitute counsel was appointed. At the motion hearing, the prosecutor stated the co-defendant was first indicted separately because of her extradition from Arizona after the defendant was indicted in June 2000. The superseding indictment jointly indicted the defendant and the co-defendant. The defendant's trial began July 24, 2001.

There was a delay of thirteen months between the defendant's first indictment and trial and a delay of approximately fifteen months from the time the defendant was brought into the state's custody and the time of trial. There is nothing further in the record to establish the cause for the delay between the first and second indictments, and there is no indication that the defendant asserted his right to a speedy trial prior to filing his motion to dismiss. Additionally, there is nothing in the record to establish that the defendant was prejudiced in any way by the delay. We conclude the defendant was not denied his right to a speedy trial.

Even if a delay between the arrest or indictment and trial does not violate a defendant's speedy trial right, it may still raise due process concerns. State v. Utley, 956 S.W.2d 489, 495 (Tenn. 1997). Accordingly, this court is required to examine the delay between the time of the offense and initiation of adversarial proceedings to determine if a pre-indictment delay caused substantial prejudice to the defendant's rights and whether the delay was the result of an intentional effort to gain a tactical advantage over the defendant. *See id.* However, as we have previously discussed, there is no showing that the delay caused the defendant any prejudice, nor is there proof the state was attempting to gain a tactical advantage. Further, it appears that part of the delay between the offense and the initiation of adversarial proceedings was caused by the defendant's efforts to avoid arrest. We conclude the defendant was not denied due process.

Given the facts before us in the record, we conclude there was no violation of the defendant's right to a speedy trial nor a violation of due process. Therefore, the trial court did not abuse its discretion in denying the defendant's motion to dismiss.

**B. Mandatory Joinder/ Tennessee Rule of Criminal Procedure Rule 8(a)**

The defendant further argues the superseding indictment violated Rule 8(a) of the Tennessee Rules of Criminal Procedure, which mandates that offenses be joined in the same indictment if they are based upon the same conduct or arise from the same criminal episode, are known to the prosecuting official at the time the indictment is returned, and are within a single court's jurisdiction. Tenn. R. Crim. P. 8(a). However, Rule 8(a) does not bar a superseding indictment before the trial of the prior indictment. *See* Marise E. Smith v. State of Tennessee, C.C.A. No. 01CO1-9708-CR-00342, 1999 Tenn. Crim. App. LEXIS 906, at *36 (Tenn. Crim. App. Sept. 2, 1999, at Nashville), *perm to app. denied* (Tenn. Jan. 31, 2000); *see also* State v. Carruthers, 35 S.W.3d 516, 573 (Tenn. 2000) (Appendix); State v. King, 717 S.W.2d 306, 308 (Tenn. Crim. App. 1986) (noting no evil results from a subsequent indictment charging additional offenses when the defendant has not been tried on any offenses at the time the subsequent indictment was returned); State v. Frank Michael Vukelich, No. M1999-00618-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 734, at *33 (Tenn. Crim. App. Sept. 11, 2001, at Nashville), *perm. to app. denied* (Tenn. Apr. 1, 2002) (following King and Carruthers); *but see* State v. Leon Hurd, No. E1999-01341-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 262, at **51-59 (Tenn. Crim. App. Apr. 10, 2001, at Knoxville) (Tipton, J., dissenting). Were this not true, superseding indictments would almost always violate Rule 8(a). Such a result runs contrary to the long-established, recognized validity of superseding indictments. *See generally* Harris, 33 S.W.3d at 771.

In the instant case, it is clear the trial court ruled the defendant would be tried only on the superseding indictment, and that the first indictment was to be dismissed upon the conclusion of the trial on the superseding indictment. The defendant's argument is without merit.

## II. SUFFICIENCY OF THE EVIDENCE

The defendant maintains the proof at trial was insufficient to support all of his convictions except the aggravated assault of Derrick Harris. We do not agree.

In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *Id.*; State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Moreover, a guilty verdict removes the presumption of innocence which the appellant enjoyed at trial and raises a presumption of guilt on appeal. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). The appellant has the burden of overcoming this presumption of guilt. *Id.*

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier

of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Abrams, 935 S.W.2d 399, 401 (Tenn. 1996). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

## A. Especially Aggravated Kidnapping

The first two counts of the indictment charged the defendant with the especially aggravated kidnappings of Angela Barnett and Derrick Harris. For purposes relevant to this case, a defendant commits especially aggravated kidnapping if: (1) he knowingly removes or confines the victim unlawfully so as to interfere substantially with the victim's liberty; and (2) the defendant accomplishes the act with a deadly weapon. Tenn. Code Ann. §§ 39-13-302(a), -305(a)(1). The defendant argues the proof, at most, supports convictions for simple kidnapping, which only requires the victims be exposed to a substantial risk of bodily injury. *See id.* § 39-13-303(a)(1).

### (1) Angela Barnett

The proof at trial established the defendant forced Angela Barnett at gunpoint to leave her home and enter his vehicle, where he continued to hold her at gunpoint and forced her to accompany him while they searched for Derrick Harris. He then returned her to her home at gunpoint. We conclude this proof was sufficient for the jury to find, beyond a reasonable doubt, that the defendant's acts toward Angela Barnett constituted especially aggravated kidnapping.

### (2) Derrick Harris

The proof showed the defendant used a handgun to threaten Derrick Harris in order to force him from the home. The defendant continued to hold Derrick Harris at gunpoint as he tried to force him into his vehicle. This proof was more than adequate to support a finding that the defendant committed especially aggravated kidnapping against Derrick Harris.

## B. Attempted Second Degree Murder

The third count of the indictment alleged the defendant committed attempted first degree murder when he shot Derrick Harris. The jury found the defendant guilty of the lesser-included offense of attempted second degree murder. The trial testimony showed the defendant entered the victim's home, attacked him, pointed a gun to his head, and made threats to shoot him. The defendant continued to hold Derrick Harris at gunpoint as he attempted to force him into the car. Finally, witnesses testified that after the defendant was shot, the defendant aimed the gun first at Angela Barnett and then turned and shot Derrick Harris. This was sufficient proof to support a finding that the defendant acted knowingly and with the requisite intent to commit second degree murder when he shot the victim. *See* Tenn. Code Ann. §§ 39-12-101, -13-210(a)(1).

## C. Aggravated Assault

Counts four and five of the indictment alleged the defendant committed aggravated assaults against Derrick Harris and William Gaines, respectively. The defendant concedes the evidence supported the jury's finding that he was guilty of the aggravated assault of Derrick Harris.[2] He argues his conviction for the aggravated assault of William Gaines is not supported by the evidence because the defendant was acting in the defense of his wife, and the state's witnesses were impeached and/or contradicted each other. These arguments are without merit.

An intentional or knowing act committed with a deadly weapon which causes another to reasonably fear imminent bodily injury is an aggravated assault. Tenn. Code Ann. §§ 39-13-101(a)(2), -102(a)(1)(B). The testimony of the eyewitnesses at trial established the defendant repeatedly fired his gun at William Gaines. Gaines testified a bullet passed through his clothing. Sgt. Robert Ellis of the Humboldt Police Department testified he found a bullet hole which contained a small piece of fabric from the clothes worn by Gaines and what appeared to be a bullet hole in the ground. This evidence was sufficient to support the jury's finding that the defendant committed aggravated assault against Gaines.

We will address the defendant's argument that he was acting in defense of his wife later in this opinion, but we do not find that it impacts the sufficiency of the evidence. Further, his argument that the state's witnesses were impeached and their testimony was inconsistent goes to the weight and credibility of the evidence offered by the state rather than its sufficiency. This issue was resolved by the jury. Therefore, the defendant's arguments are without merit.

## D. Reckless Endangerment

The sixth count of the indictment charged the defendant with felony reckless endangerment of his eight-year old daughter, Essence Harris, by placing her in imminent danger of death or serious bodily injury with a handgun. *See* Tenn. Code Ann. § 39-13-103. Witnesses testified the defendant pointed his gun at Angela Barnett immediately after she shot him. Essence Harris testified she was standing near Barnett when Barnett fired the shot. This proof was sufficient to support the conviction.

## E. Merger

---

[2] Instead of complaining about the sufficiency of the evidence supporting this aggravated assault conviction, the defendant contends his convictions for both aggravated assault of Derrick Harris and attempted second degree murder of Derrick Harris arising from the same shooting violate double jeopardy. At sentencing, the trial court stated, and we agree, the convictions should be merged. Although the trial court noted this merger in the judgment of conviction for aggravated assault, the judgment sentences the defendant to three years for the offense. Due to the merger, this sentence will be set aside.

As part of his argument on the sufficiency of the evidence, the defendant contends that dual convictions for attempted second degree murder and aggravated assault arising from the shooting of Derrick Harris were improper. We agree dual convictions for these offenses violate double jeopardy. *See* State v. Denton, 938 S.W.2d 373, 381 (Tenn. 1996). The trial court ruled that the aggravated assault conviction should merge with the attempted second degree murder conviction, and the defendant would not be sentenced for aggravated assault. Nevertheless, the trial court entered a judgment of conviction with a three-year sentence for this aggravated assault, although there is a notation on that judgment that it merged with the attempted second degree murder conviction. Although it has no effect upon the effective sentence, we set aside this sentence of three years; the aggravated assault conviction was merged with attempted second degree murder, and a separate sentence for this aggravated assault would not be proper. We remand for entry of an order setting aside this sentence.

### III. JURY INSTRUCTIONS

The defendant maintains the trial court's jury charge was improper because it did not include instructions on self-defense in regard to the aggravated assault of William Gaines and the reckless endangerment of defendant's daughter. He also argues the trial court should have instructed the jury regarding facilitation as a lesser-included charge of the indicted offenses and attempted voluntary manslaughter as a lesser-included charge of attempted first degree murder. We conclude the trial court properly instructed the jury.

**A. Self-Defense**

Tennessee Code Annotated section 39-11-611(a) provides:

> A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. There is no duty to retreat before a person threatens or uses force.

However, if the person provokes the use or attempted use of force and does not abandon the encounter, he is not justified in threatening or using force. Tenn. Code Ann. § 39-11-611(d).

-10-

A defendant is justified in threatening or using force to act in defense of a third person if, under the circumstances as the defendant reasonably believes them to be, the third person would be justified in acting in his or her own defense. Tenn. Code Ann. § 39-11-612(1). Further, the defendant must reasonably believe the intervention is immediately necessary to protect the third person. Tenn. Code Ann. § 39-11-612(2). A criminal defendant's conduct and mental state must meet an objective standard of reasonableness in order for the conduct to be justified under Tennessee Code Annotated sections 39-11-611 and 39-11-612. State v. Bult, 989 S.W.2d 730, 732 (Tenn. Crim. App. 1998). In acting to protect the third person, the defendant "steps into the [third person's] shoes" and "may lawfully do [in the third person's] defense only what that person could have done, and no more." State v. Furlough, 797 S.W.2d 631, 652 (Tenn. Crim. App. 1990) (quoting State v. Barnes, 675 S.W.2d 195, 196 (Tenn. Crim. App. 1984)).

Before the existence of a defense is submitted to the jury, it must be fairly raised by the proof. *See* Tenn. Code Ann. § 39-11-203(c). In determining whether the proof fairly raises a defense, "the court must examine the evidence in the light most favorable to the defendant to determine whether there is evidence that reasonable minds could accept as to that defense." State v. Sims, 45 S.W.3d 1, 9 (Tenn. 2001).

### (1) Aggravated Assault of William Gaines

The defendant contends he was entitled to a jury instruction on the defense of a third person because there was proof he was acting in defense of his wife and co-defendant, Claudia Harris, when he fired shots at William Gaines. We disagree.

Although there was proof that Derrick Harris urged William Gaines to grab Claudia Harris and "break her neck," there is no proof Gaines acted upon this instruction. Instead, both Gaines and Derrick Harris testified Gaines made no effort to harm the co-defendant. They also stated the co-defendant fled after Angela Barnett shot the defendant; therefore, according to the evidence, Gaines was not near the co-defendant when the defendant fired the shots. In short, the co-defendant was not in imminent danger of death or serious bodily injury at the time the defendant shot at Gaines. There was no evidence to the contrary. Therefore, the proof did not fairly raise the defense of a third person.

Further, the proof established that both the defendant and the co-defendant threatened the use of violence, thus provoking a potential use of force or threat of force against them. Derrick Harris testified Claudia Harris stated that if he did not tell them how to locate Mark Cunningham, she and the defendant were going to shoot everyone in the house. According to Derrick Harris, she also said they "weren't gonna leave no [sic] witnesses." Thus, according to the undisputed proof, the co-defendant was acting in full concert with the defendant. *See* Tenn. Code Ann. § 39-11-402(2). The defendant and the co-defendant jointly instigated this entire criminal episode, which the defendant at no time abandoned prior to shooting at Gaines. The defendant is in no position to benefit from his criminal undertaking and assert he was properly defending his co-perpetrator.

### (2) Reckless Endangerment of Essence Harris

The defendant also argues he was acting in self-defense, after he was shot, when he pointed his gun at Angela Barnett with his daughter nearby; therefore, he was entitled to a jury instruction on self-defense on the charge of reckless endangerment. The proof clearly established Barnett shot the defendant after he attacked Derrick Harris, led him out of the home at gunpoint, and was attempting to force him into a vehicle. There is no doubt that by these actions, the defendant provoked the use of force by Angela Barnett. Her use of force was not unlawful; accordingly, the defendant was not justified in pointing his weapon toward her. *See* Tenn. Code Ann. § 39-11-611(d). The defendant's argument is without merit.

## B. Lesser-Included Offenses

It is the defendant's position that the trial court erred in failing to charge the jury on facilitation as a lesser-included offense of all the offenses and on attempted voluntary manslaughter as a lesser-included offense of attempted first degree murder. We do not agree.

The trial court has a duty to instruct the jury on any lesser-included offenses of the charged offense when such instruction is supported by the evidence, regardless of whether the defendant has requested such an instruction. State v. Bowles, 52 S.W.3d 69, 74 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 464 (Tenn. 1999). The standard for an appellate court's review of the trial court's charge to the jury regarding lesser-included offenses is *de novo* with no presumption of correctness. Bowles, 52 S.W.3d at 74.

If an offense is found to be a lesser-included offense, the court must next ascertain whether the evidence justifies a jury instruction on the lesser-included offense. *Id*. at 75. To do so, the court must first determine whether there is evidence that "reasonable minds" could accept to establish the lesser-included offense. Burns, 6 S.W.3d at 469. The court must view the evidence liberally in a light most favorable to the existence of the lesser-included offense without judging its credibility. State v. Ely, 48 S.W.3d 710, 722 (Tenn. 2001); Burns, 6 S.W.3d at 469. Finally, the court must determine if the evidence is "legally sufficient" to support a conviction for the lesser-included offense. Burns, 6 S.W.3d at 469.

The evidence, not the theories of the parties, determines whether an instruction on a lesser-included offense should be given. State v. Allen, 69 S.W.3d 181, 188 (Tenn. 2002). Furthermore, the decision to convict on a lesser-included offense should not be taken from the jury simply because the element distinguishing the greater offense from the lesser offense is "uncontroverted." *Id*. at 189. If the evidence justifies an instruction, the failure to charge the offense is error even though the evidence was also sufficient to support the greater offense. Burns, 6 S.W.3d at 472.

### (1) Motion for New Trial

We would first note that while the defendant's motion for new trial stated the trial court failed "to charge the jury with self [-] defense and to properly charge less [sic] included offenses," it did not specify which lesser-included offenses he contended the trial court should have charged.

Further, the defendant failed to present his arguments regarding the need for a jury instruction on facilitation and attempted voluntary manslaughter to the trial court during the hearing on the motion for new trial. In fact, during that hearing, the trial court asked defense counsel to specify which lesser-included offenses he claimed should have been charged. Defense counsel replied, "I don't know, but I don't have the record in front of me.... It might be simple assault."

A defendant seeking appellate review of the trial court's instructions to the jury on an appeal as of right must *specifically* state the issue presented for review in a motion for a new trial; otherwise the issue is waived. Tenn. R. App. P. 3(e) (emphasis added); *see* State v. Gauldin, 737 S.W.2d 795, 798 (Tenn. Crim. App. 1987). Furthermore, Tennessee Rule of Criminal Procedure 47 requires that all motions "state with particularity the grounds upon which [they] are made and shall set forth the relief or order sought." Despite this shortcoming, we elect to address the issue on the merits.

### (2) Facilitation

The defendant claims he was entitled to a jury charge on facilitation on each offense because the co-defendant, Claudia Harris, was actively involved in the criminal conduct and the proof showed she directed at least part of the acts. This argument is without merit.

A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, he knowingly furnishes substantial assistance in the commission of the specific felony, but acts without the intent to promote or assist the commission of the offense, or benefit in the proceeds or results of the offense. Tenn. Code Ann. §§ 39-11-402(2), -403(a). Facilitation of a charged offense is a lesser-included offense. Burns, 6 S.W.3d at 466-67. However, there was no evidence presented at trial which justified a jury charge on facilitation regarding any of the charged offenses. All the offenses were based strictly upon the defendant's criminal conduct in using a pistol; he was unquestionably the principal actor. No reasonable juror could have concluded that the defendant knew the unarmed co-defendant intended to commit these offenses and that he acted without the intent to promote her commission of these offenses. This issue is without merit.

### (3) Attempted Voluntary Manslaughter

The defendant also maintains the trial court erred in not instructing the jury on attempted voluntary manslaughter as a lesser-included offense of attempted first degree murder.

Voluntary manslaughter is a lesser-included offense of first degree murder. State v. Rush, 50 S.W.3d 424, 430 n.7 (Tenn. 2001); State v Dominy, 6 S.W.3d 472, 477 n.9 (Tenn. 1999). Therefore, it stands to reason that attempt to commit voluntary manslaughter is a lesser-included offense of attempt to commit first degree murder. Thus, we must determine whether there is any evidence in the record that reasonable minds could accept as to attempted voluntary manslaughter, while viewing the evidence liberally in a light most favorable to the existence of the lesser-included offense without judging its credibility. Ely, 48 S.W.3d at 722; Burns, 6 S.W.3d at 469.

Voluntary manslaughter is the "intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a). A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense, acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense. Tenn. Code Ann. § 39-12-101(a)(3).

The crucial question in the instant case is whether there was evidence the defendant, when he shot Derrick Harris, acted in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner. The defendant contends there was sufficient evidence that he was adequately provoked into such a state of passion because the evidence showed he was shot by Angela Barnett just before he shot Derrick Harris.

"In order to reduce a homicide to manslaughter, the provocation must have come from the person who was killed ...." 40 C.J.S. *Homicide* § 81(c) (1991). Our state supreme court has held voluntary manslaughter did not apply where a defendant kills an unarmed bystander because the bystander was "on the side" of the one provoking the fight. State v. Tilson, 503 S.W.2d 921, 924 (Tenn. 1974). Likewise, we conclude the evidence in the instant case did not support a charge of attempted voluntary manslaughter. The defendant, in the midst of committing an especially aggravated kidnapping, shot his unarmed victim whom he had been holding at gunpoint and who had done nothing to provoke the defendant.

Further, the fact that the defendant was shot by Angela Barnett did not provide "adequate provocation" for the defendant to shoot Derrick Harris. Where a difficulty is provoked by the accused, the accused may not claim the benefit of sudden passion aroused by another. 40 C.J.S. *Homicide* §81(b) (1991). The defendant was the gun-wielding instigator of the criminal episode. It was his criminal acts that led to his being lawfully shot by one of the victims. As the author of his own predicament, he cannot claim he was adequately provoked into shooting Derrick Harris. The trial court did not commit error in failing to charge the jury on attempted voluntary manslaughter.

## IV. SENTENCING

At sentencing, the trial court found the defendant to be a Range I standard offender. It applied enhancement factor (1), the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, to all the convictions and enhancement factor (12), the defendant's actions resulted in serious bodily injury, to the convictions for especially aggravated kidnapping and attempted second degree murder of Derrick Harris. *See* Tenn. Code Ann. § 40-35-114 (1), (12). It further found the defendant's service in the Army and his honorable discharge should be considered as a mitigating factor. *See* Tenn. Code Ann. § 40-35-113(13). The defendant requested the trial court also apply mitigating factors (2), the defendant acted under strong provocation, and (11), the defendant committed the offense

-14-

under such unusual circumstances that it was unlikely a sustained intent to violate the law motivated his conduct. The trial court stated it would give these factors little or no weight. *See* Tenn. Code Ann. § 40-35-113(2), (11).

The trial court sentenced the defendant to twenty years for each especially aggravated kidnapping, eight years for attempted second degree murder, three years for aggravated assault, and eighteen months for reckless endangerment. It further found the defendant to be a dangerous offender for the purposes of consecutive sentencing. *See* Tenn. Code Ann. § 40-35-115(b)(4). It ordered the eight-year sentence for attempted second degree murder and the three-year sentence for aggravated assault served consecutively to the concurrent twenty-year sentences for especially aggravated kidnapping with the remaining sentence for reckless endangerment to be served concurrently, for a total effective sentence of thirty-one years.

The defendant argues his sentences are excessive, and consecutive sentencing was not appropriate. An appellate court's review of a challenged sentence is *de novo* on the record with a presumption the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). The Sentencing Commission Comments to this section of the statute indicate the defendant bears the burden of establishing that the sentence is improper. When the trial court follows the statutory sentencing procedure and gives due consideration and proper weight to the factors and principles relevant to sentencing, this court may not disturb the sentence. State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000). If the trial court does not comply with the statutory provisions, this court's review is *de novo* with no presumption of correctness. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

**A. Length of Sentences**

The defendant argues his sentences are excessive, but he does not argue either of the enhancement factors was misapplied. Instead, he contends the trial court should have given greater weight to the mitigating factors. The weight to be applied to enhancement and mitigating factors is within the discretion of the trial court. State v. Kelley, 34 S.W.3d 471, 479 (Tenn. Crim. App. 2000). The twenty-year sentences imposed by the court for the Class A felony especially aggravated kidnapping convictions were the presumptive sentences in the midpoint of the range. *See* Tenn. Code Ann. §§ 40-35-112(a)(1), -210(c). Further, the eight-year sentence for attempted second degree murder and the three-year sentence for aggravated assault were the minimum sentences. *See* Tenn. Code Ann. § 40-35-112(a)(2), (3). Therefore, it appears that although the trial court stated it applied two enhancement factors, it did not enhance any of the defendant's sentences above the presumptive sentence except for the eighteen-month sentence for felony reckless endangerment. Based on our review of the record, we do not find the trial court erred in imposing the presumptive sentence for the offenses nor in imposing an eighteen-month sentence for reckless endangerment.

**B. Consecutive Sentencing**

Generally, it is within the discretion of the trial court to impose consecutive sentences if it finds by a preponderance of the evidence that "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(4). In the instant case, the

trial court concluded consecutive sentencing was appropriate because the defendant was a dangerous offender. The defendant argues the trial court erred in making this determination.

If the court concludes the defendant is a dangerous offender under Tennessee Code Annotated section 40-35-115(b)(4), it must make two further determinations in addition to applying general sentencing principles. State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002). First, it must find an extended sentence is necessary to protect the public from further criminal conduct by the defendant, and, second, it must find consecutive sentencing to be reasonably related to the severity of the offenses. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

The trial court failed to make findings that consecutive sentencing was necessary to protect the public from further criminal conduct by the defendant and that the consecutive sentences were reasonably related to the offenses. However, this court may make these determinations based upon our *de novo* review. State v. Alexander, 957 S.W.2d 1, 8 (Tenn. Crim. App. 1997).

After a thorough examination of the record, we agree with the trial court that the defendant is a dangerous offender for the purposes of consecutive sentencing. The evidence before this court establishes the defendant forced Angela Barnett and her young son, Isaiah Harris, into a car at gunpoint. He returned to the mobile home, which he knew was occupied by his eight-year-old daughter, where he physically attacked Derrick Harris, waved the gun around, and threatened to shoot all of the occupants of the mobile home.

He then forced Derrick Harris outside while holding the gun to his head and attempted to force Derrick Harris into a car. When Angela Barnett interceded by shooting the defendant, the defendant responded by aiming his gun at Barnett with his daughter nearby, by shooting Derrick Harris, and by firing repeatedly at William Gaines. The defendant acted viciously to achieve his purposes, heedless of the risk to the lives of two young children and four adults innocently involved in this criminal episode. It is clear from the defendant's continuous course of conduct that he had little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high.

Further, we find consecutive sentencing is necessary to protect the public from further criminal conduct by the defendant, and the effective thirty-one-year sentence is reasonably related to the severity of the offenses. We conclude the sentences imposed by the trial court were appropriate and decline to alter them.

## CONCLUSION

The judgments of the trial court are affirmed with the exception of the three-year sentence for the aggravated assault of Derrick Harris, which should be set aside because this conviction merged with the attempted second degree murder conviction.

_____
JOE G. RILEY, JUDGE